

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Charles A. Tosah
County Attorney
Dallas County
Dallas, Texas

Dear Sir:

Opinion Number O-5513
Re: Authority of Dallas County
to fund its legally issued
general fund scrip warrants
by the issuance of funding
bonds.

We are in receipt of your letter of recent date reading as follows:

"On December 1, 1939, you advised the writer as follows:

"'Dallas County is not authorized to re-finance its present general fund debt by the issuance of coupon bonds, under the Bond and Warrant Law of 1931. Letter Opinion Sept. 23, 1935.

"'It is the policy of the Attorney General's Department to overrule an opinion written by a prior administration, only where re-examination of the question convinces the department that the prior opinion is clearly wrong.

"'It is the policy of the Attorney General's Department to decline to approve bond issues

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Charles A. Tosch, page #2

where there appears any reasonable doubt
of its authority.' (Volume 1, Annual
Opinion Report, Page 442.)

"The letter opinion therein referred to was a
communication written to Mr. W. P. Dumas, Attorney,
at Dallas, by Assistant Attorneys General Mrs. Wal-
dron and Mr. Bouldin with reference to $15,000.00
General Fund Funding Bonds then proposed to be is-
sued by Somervell County. The letter opinion states:
that the Bond and Warrant Law of 1931 authorizes
warrants which evidence 'debts' created pursuant to
Section 7, of Article 11, of the Constitution, and
that as the evidences of the original debt then
sought to be funded by Somervell County were in the
form of 'scrip', the same could not be funded
by the issuance of the proposed bonds, because in
the issuance of such 'scrip' it was contemplated
that the same would be paid out of the current rev-
enues for the year. In other words, the Attorney
General's Department held that the time warrants of
a county (payable in future years, and issued pur-
suant to contract, and supported by a continuing
direct annual ad valorem tax) are the only warrant
debts that can be converted into bonds under this
law.

"The Attorney General's Department also held that
the general fund of a county cannot in any part be
pledged to the payment of obligations or bonds, the
maturities of which extend beyond the current fiscal
year.

"The contention of the Attorney General with refer-
ence to the levy of the tax in payment of debts against
a general fund was overruled by the Texas Supreme Court
in Bexar County vs. Mann, 157 S.W. 2d- 134.

"The present indebtedness against the Dallas County
General Fund, evidenced by scrip issued subsequent to
January 1, 1942, is approximately $750,000.00.

Honorable Charles A. Tosoh, page #3

"In 1941 the Legislature passed an Act authorizing counties having a population of 100,000 or more to vote bonds for the purpose of refunding indebtedness against the general fund of any such county and which indebtedness existed on April 30, 1941. This Act will be found in Vernon's Statutes as Article 717a-1. No election was ever ordered in Dallas County under the Act of 1941; and owing to the fact that almost all of the scrip warrants outstanding against the Dallas County General Fund, prior to April 30, 1941, have been paid, the aforesaid Act of 1941 does not at this time serve any practical purpose.

"As the Supreme Court has held in the Bexar County case that counties are authorized to levy a part of the twenty-five cents general fund tax in payment of debts due in future years, and in view of the fact that it will be to the financial interests of Dallas County to re-finance its general fund debt by the issuance of coupon bonds, the following questions are respectfully submitted and your opinion requested:

"(1) In view of the Act of 1941 (Article 717a-1 Vernon's Statutes) is Dallas County now authorized to re-finance its general fund indebtedness by the issuance of bonds pursuant to Chapter 163, Acts 1931, (Article 2368a-Section 7, Vernon's Statutes)?

"(2) As Dallas County has a population in excess of 350,000 as shown by the last preceding United States Census, it is subject to the provisions of House Bill Number 958 of the General Laws passed by the Forty-sixth Legislature at its Regular Session in 1939 (Page 144, Acts of said Session). This Act provides that the County Auditor in all such counties shall serve as budget officer for the

572

commissioners' court and that 'on or
immediately after January 1st of each
year he shall prepare a budget to cover
all proposed expenditures of the county
government for the current fiscal year
and calendar year.' The $750,000.00 in-
debtedness now outstanding against the
Dallas County General Fund is represent-
ed by scrip warrants issued in 1942 and
1943. The fact that taxes become due and
payable on October 1st of each year, and,
assuming that the county has authority to
issue the proposed refunding bonds, will
the Commissioners' Court be authorized to
enter into an agreement with the holder or
holders of the outstanding scrip warrants
to change the form of such indebtedness by
the issuance of the refunding bonds? (The
order of the Commissioners' Court authoris-
ing the issuance and publication of the
notice of intention to refund such indebt-
edness will describe in detail the scrip
warrants which are to be refunded, and
thereupon, pursuant to the agreement with
the holders of such scrip, the county will
cease payment of the scrip in the order
of registration).

"(3) As the present indebtedness is represented
by scrip warrants for various sums and
amounts, it is suggested that the bond pro-
ceedings provide for the issuance of interim
warrants in exchange for and in lieu of the
scrip warrants and that such interim warrants
be delivered in due course to the State Comp-
troller for registration in lieu of the refund-
ing bonds. Please advise if this method of
procedure will meet with your approval. If
interim warrants in denominations of say
$5,000.00 are issued to the proper holders
in exchange for numerous scrip warrants,

Honorable Charles A. Tosch, page #5

aggregating an equal amount, it will
save considerable time and trouble in
the Comptroller's Department at the
time of the registration of the refund-
ing bonds; for the Comptroller would
cancel the interim warrants and register
in lieu thereof an equal amount of the
refunding bonds.

"We have had numerous conferences with Mr. Dumas
on this problem and I am enclosing herewith a copy
of a communication from him dated August 2, 1943,
addressed to the County Judge and myself, in which
he holds that Dallas County is authorized to refund
its present general fund debt (evidenced by scrip
issued subsequent to January 1, 1942) by the issu-
ance of bonds in accordance with the procedure pre-
scribed by Chapter 163, Acts 1931 (Article 2368-a,
Section 7, Vernon's Statutes)."

Replying to your questions in their order you are ad-
vised --

1. Article 717a-1 authorized counties having a popu-
lation of 100,000 or more to vote bonds for the purpose of
funding certain indebtedness outstanding on April 30, 1941.
Since it is not now proposed to refund or fund any indebted-
ness existing on that date, we think said article is inappli-
cable to bonds which may be authorized pursuant to the author-
ity conferred by Chapter 163, Acts 1931 (Articles 2368a, Sec-
tion 7, Vernon's Statutes).

2. The letter opinion to which reference is made in
your letter was written prior to the opinion of the Supreme
Court in the case of Bexar County vs. Mann, 157 S. W. (2d) 134.
Evidently the legal theory which the writers of the Somervell
opinion had in mind as supporting their position was that the
25¢ constitutional tax for the general fund could not be in-
cumbered for future years because it was the purpose of Article
8, Section 9, to preserve the 25¢ general fund tax unincumbered

Honorable Charles A. Tosch, page #6

for the governmental operating expenses of the county.  This question has now been foreclosed by the Bexar County opinion which approved the holding of the Court of Civil Appeals in the case of Cass County vs. Wilbarger County, 60 S. W. 988. We quote the following paragraph from the opinion of the Supreme Court in the Bexar County case:

"In our opinion, our decisions have already settled it as the law of this State that the general fund tax of twenty-five cents, authorized to be levied by counties for 'county purposes' by Section 9 of Article VIII of our Constitution, can be pledged for the payment of obligations or bonds, the maturities of which extend beyond the current fiscal year for which said tax was levied.  It follows that the statute under consideration here, which authorizes bonds to be issued over a series of years out of a county's general fund tax, does not violate the above constitutional provision.  Cass County vs. Wilbarger County, 25 Texas Civ. App., 52, 60 S. W. 988, writ refused; Hidalgo County vs. Haney, Tex. Civ. App., 67 S. W. (2d) 409.

"In Cass County vs. Wilbarger County, supra, the validity of an Act passed at the Regular Session of the Twenty-first Legislature, 1889, page 89, was involved.  Such Act authorized the commissioners' court of any county to fund any existing indebtedness lawfully made prior to January 1, 1889, into bonds running twenty years. Such Act expressly provided that 'nothing herein shall be construed to authorize any county to levy any tax in excess of that authorized by the Constitution and the laws now in force.'  The effect of this restrictive provision was to compel warrants or bonds issued thereunder to be charged against existing powers of taxation. Acting under this law, Wilbarger County issued $20,000.00 in bonds running twenty years, to pay

Honorable Charles A. Tosch, page #7

off that amount in outstanding warrants thereto-
fore issued against the general fund of the county.
The bonds were to be serviced out of the same fund
by the levy of a tax of five cents. This levy,
of course, had to be charged against the twenty-
five cents tax authorized by Section 9 of Article
VIII of our Constitution. It was contended that
the Commissioners' Court had no power to fix such
a charge against such tax. In other words, it
was contended that the twenty-five cents tax
authorized by the above constitutional provision
for 'county purposes' was intended to be reserved
by the Constitution to meet the annual expenses
of county government. (25 Tex. Civ. App. 52, 60
S.W. 990.) The opinion expressly rejects such
contention, and holds that such bonds could be
charged to and paid out of the twenty-five cents
tax above mentioned. To our minds, the opinion
under consideration settles this case adversely
to the contention of the Attorney General. We
here call attention to the fact that this Court
refused writ of error in the above case, thereby
approving the opinion."

We call your attention to the final statement of the
Court in its opinion in the Bexar County case, supra, which is
as follows:

"Finally, we wish to say that the Attorney
General makes no contention in this case that the
issuance of these bonds as a charge against the
general funds of Bexar County for future years
will render that county insolvent for such years,
and neither is it contended that the appropria-
tion of such funds for such years will render it
impossible for the county to operate."

This language would imply that the Court would not approve
the appropriation of a tax rate which would not leave a suf-
ficient portion of the 25¢ general fund tax to enable the
county to operate.

The bonds issued by Wilbarger County were issued to fund valid debts created from year to year for current expenses. The Court, in its opinion in that case, said "It has been held that legislative provisions for funding debts are to be favorably and liberally construed. * * * Seeing that many counties were unable to make suitable provisions for both overdue and current expenses of municipal government in the usual way, and that by the issuance of bonds to cover the overdue debts a portion of the constitutional taxing power might reasonably be exercised for a series of years to pay off the bonds without serious inconvenience to the counties in the discharge of their current expense obligations, the Legislature saw fit to confer upon commissioners' courts of counties so situated the power of issuing such bonds and of making a suitable levy of taxes for their payment; and we think the law should be sustained. If the levy in question had been made to pay the original warrants, which were a charge upon the current revenues, and were paid substantially out of the proceeds of the bonds, the Constitution would not have been violated, and we see no good reason why a different construction should be adopted merely because the form of the county's obligation was changed."

The Wilbarger County bonds were issued under an Act of the Legislature entitled "An Act to authorize counties to fund their indebtedness and to provide means to pay the same," approved April 4, 1889. The authority under which it is proposed to issue the Dallas County bonds is found in Section 7, Article 2368a, which provides, in part, "The Commissioners' Court of a county * * * may pass all necessary orders * * * to provide for funding * * * the whole or any part of any legal debt of such county * * * by cancelling evidences thereof and issuing to the holder or creditors, notes, bonds, or treasury warrants, with or without coupons bearing interest payable annually or semi-annually at a rate not to exceed 6% per annum." It will be observed that Section 7, Article 2368a, undertakes to treat of various kinds of obligations peculiar to municipal financing. Subdivision (a) authorizes the issuance of refunding bonds for the purpose of refunding any legally issued outstanding bonds. Subdivision (b) authorizes the funding of the whole or part of any legal debt existing at the time the Act became effective except that which was issued

Honorable Charles A. Tosch, page #9

upon the condition that it should never become a charge upon
the general revenues of the county and providing that if fund-
ing bonds are delivered, "the evidences of the original indebt-
edness" shall be surrendered to the Comptroller and cancelled
by him prior to the registration of such funding bonds. Sub-
division (c) authorizes the funding of any and all outstanding
legal indebtedness existing at the time the Act became effect-
ive into notes or treasury warrants with or without coupons.
It appears clear that the Legislature was well aware of the
fact that legal debts of counties were not necessarily confined
to obligations for which a tax levy was required by the Consti-
tution as in the case of bonds or time warrants. Subdivision
(d) begins by stating "After this Act becomes effective no item
of indebtedness thereafter issued except bonds and matured cou-
pons thereon and except items of indebtedness to be issued under
contracts made before this law becomes effective shall be funded
or refunded except in the manner hereinafter in this subsection
prescribed * * *." The "manner prescribed" includes notice of
intention to issue funding bonds, including a statement of the
amount and purpose of such bonds, such notice to be published
once a week for three successive weeks in a newspaper published
in the county * * * at least thirty days before the meeting of
the Commissioners' Court, at which time it is proposed to issue
such bonds. The subdivision further provides for a referendum
election if a petition is filed signed by 10% of the qualified
taxpaying voters of the county.

The Bond and Warrant Law (Article 2368a, Vernon's Texas
Statutes) was enacted in 1931, which was subsequent to the de-
cision in the case of Cass County vs. Wilbarger County, supra,
and the Legislature can be presumed to have known the meaning
of "legal debt" as accepted by the court, and in view of the
decision of the court in that case we are of the opinion that
the words "legal debt" as used in Article 2368a, Section 7, ap-
plies to scrip warrants with as much force as to any other form
of legal obligation of which a county is capable of creating.

Your question with reference to the budget law and the
time that taxes are due, and whether the Commissioners' Court
is authorized to enter an agreement with the holders of the out-
standing scrip warrants to change the form of such indebtedness,
is a little confusing. The only way funding or refunding bonds

Honorable Charles A. Tosch, page #10

can be issued is by effecting an exchange of such bonds in
lieu of the indebtedness funded or refunded, and it neces-
sarily follows that the holders of the indebtedness must
agree to such exchange, unless the debts are represented by
securities which are optional at the time such refunding
bonds are issued.

3. We find no express statutory authority for the
issuance of "Interim Warrants," and while we recognize the
advantage in saving time and trouble in the Comptroller's
office, we favor the procedure laid down in the Bond and War-
rant Law (Article 2368a, Vernon's Statutes). In any event
the scrip funded into "interim warrants" must pass the same
test for legality that would be applied to converting it
directly into bonds, and would call for an additional opera-
tion that seems unnecessary.

Since the Supreme Court in the case of Bexar County
vs. Mann has so recently approved the holding in the case of
Cass County vs. Wilbarger County, and since the Wilbarger
County bonds were issued to refund warrants that were issued
in lieu of scrip payable out of the general fund in payment
of current expenses we feel impelled to modify the "Somer-
vell" opinion cited by you in your opinion request, so that
we now advise that funding bonds issued to fund scrip issued
against the general fund of Dallas County will be approved
provided that the proceedings authorizing their issuance
show that the scrip warrants evidence a valid and subsist-
ing indebtedness against the general fund of the county, and
at the time they were issued it was contemplated that the
said scrip warrants would be paid out of the reasonably ex-
pected revenues of the county for the years in which said
scrip warrants were, respectively, issued, but said revenue
having fallen short of the amount expected, said scrip war-
rants remain unpaid; that the issuance of the proposed bonds
will not render it impossible for the county to operate; that
the levy of the tax to pay the principal of and interest on
the proposed bonds as the same mature will not curtail or
embarrass the county in meeting necessary governmental ex-
penses in future years; that both the principal and interest

Honorable Charles A. Tosch, page #11

can be paid when and as the same become due from the tax levied out of the 25¢ tax authorized for "county purposes" by Section 9, Article 8 of the Constitution, and that the proceedings evidence compliance with the requirements of the Bond and Warrant Law of 1931, (Article 2368a, Vernon's Statutes).

Very truly yours

ATTORNEY GENERAL OF TEXAS

By C. F. Gibson

C. F. Gibson
Assistant

CFG-s

of
C. C. R.

APPROVED AUG 27, 1943

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN